**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MICHAEL J. MOSLEY, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-00375** |
| **DANNY ENGELBERG ET AL** | **SECTION "B" (4)** |

**ORDER & REASONS**

Before the Court are Defendants, the Louisiana Public Defender Oversight Board and Rémy Voisin Starns's Motion to Dismiss (Rec. Doc. 14), Defendants, Mike Early and File Depot's Motion to Dismiss (Rec. Doc. 24), and Defendants, Danny Engelberg, April Leblanc, and the Orleans Public Defenders' Motion to Dismiss (Rec. Doc. 31). Also before the Court are Plaintiff Michael J. Mosley, Jr.'s Responses in Opposition (Rec. Doc. 16; Rec. Doc. 28; and Rec. Doc. 34) and Defendant Engelberg, Leblanc, and the Orleans Public Defenders Reply in Further Support of the Motion to Dismiss. (Rec. Doc. 39.) For the following reasons,

**IT IS ORDERED** that the named Defendants' respective motions for dismissal (Rec. Doc. 14; Rec. Doc. 24; and Rec. Doc. 31) are converted into motions for summary judgment and **GRANTED** as to Plaintiff Mosley's § 1983 claims. **IT IS FURTHER ORDERED** that Mr. Mosley's state law claims be **DISMISSED WITHOUT PREJUDICE.**

## I. FACTUAL BACKGROUND & PROCEDURAL BACKGROUND

Plaintiff Michael Mosley, Jr. was a client of the Orleans Public Defenders ("OPD") in 2002-03 and 2023. (Rec. Doc. 31-1 at 1; Rec. Doc. 34-2 at 7). He is currently on parole after being convicted in 2003. (Rec. Doc. 16-3; Rec. Doc. 34-2 at 4.)

Between July 2024 and November 2025, Mr. Mosley and his advocates, Kristy Smith and Kim Ford, contacted Defendant Danny Engelberg, Chief Public Defender of the OPD, seeking his

case file for the 2002 matter. (Rec. Doc. 1 at 4; Rec. Doc. 40-1 at 2.) Despite repeated attempts, Mr. Mosley alleges he has failed to receive the complete file. (Id.)

On June 12, 2025, Mr. Mosley formally requested his entire file from Amber Ramanauskas, an OPD attorney that represented Mr. Mosley during his joint motion to reconsider sentence. (Id.; Rec. Doc 34-2 at 3.) According to Mr. Mosley, this request did not result in production of the file. (Rec. Doc. 1 at 4.) Once more, on June 16, 2025, Mr. Mosley requested his file, to no avail. (Id.; Rec. Doc. 16-3.)

Thereafter, on June 18, 2025, Defendant Mike Early, in his capacity as President of File Depot, emailed Mr. Mosley the following regarding his file: "Regarding your request for the file of Michael Mosley, Case #433075, we have searched thoroughly for this file in the four boxes provided to us but are unable to locate it in any of the relevant boxes in our record inventory." (Id.; Rec. Doc. 16-4.)

On June 24, 2025, Defendant April Leblanc, in her capacity as Senior Legal Assistant of the OPD, communicated that the file could not be located from the File Depot Warehouse. (Rec. Doc. 16-5.) According to Mr. Mosley, on July 9, 2025, Ms. Leblanc provided a physical folder to his advocates. (Rec. Doc. 1 at 5.) Upon review, Mr. Mosley's advocates discovered that the folder contained confidential records of another individual. (Id.)

As a result of the foregoing, Mr. Mosley filed his original complaint on February 19, 2026. (Id. at 1.) He raised three causes of action: (1) a 42 U.S.C. § 1983 claim for deprivation of his Fourteenth Amendment liberty and property interests (the case file); (2) a 42 U.S.C. § 1983 claim for failure to train and supervise (*Monell* Claim); and (3) state law claims for professional negligence and breach of fiduciary duty. (Id. at 6.) On the same day, Mr. Mosley filed his motion for leave to proceed *in forma pauperis*. (Rec. Doc. 2.)

On February 24, 2026, Mr. Mosley's motion for leave to proceed *in forma pauperis* was granted. (Rec. Doc. 3.) Thereafter, Defendants, the Board and Mr. Starns, filed their motion to dismiss for failure to state a claim on April 17, 2026. (Rec. Doc. 14.) Mr. Mosley responded on May 2, 2026. (Rec. Doc. 16.) In similar fashion, Defendants Mr. Early and File Depot filed their motion to dismiss for failure to state a claim (Rec. Doc. 24) on June 16, 2026, as did Defendants Mr. Engelberg, Ms. Leblanc, and the OPD ("OPD Defendants") on June 29, 2026. (Rec. Doc. 31.) Mr. Mosley responded to those motions as well. (Rec. Doc. 28; Rec. Doc. 34.)

On July 7, 2026, the Court ordered that the call docket had passed as to Mr. Hufft, ordering dismissal of the motion for issuance of alias summons pending resolution of an unopposed motion to dismiss. (Rec. Doc. 30; Rec. Doc. 35.)

On August 4, 2026, Mr. Mosley filed a motion for leave to file first amended complaint. (Rec. Doc. 40.) In his proposed amended complaint, Mr. Mosley added (1) a claim for substantive due process for arbitrary, coercive state action shocking the conscience and (2) state law claims for conversion and spoilation. (Rec. Doc. 40-1 at 6-8.) Magistrate Judge Karen Wells Roby set submission on the first amended complaint for August 26, 2026, and noted that the matter is submitted without oral argument. (Rec. Doc. 43.)

## II. LAW & ANALYSIS

### A. Legal Standard

1. *Converting Rule 12(b)(6) motion to dismiss into a motion for summary judgment.*

In general, Rule 12(b)(6) motions are "viewed with disfavor and rarely granted." *See Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). Application of Rule 12(b)(6) requires the district court to "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the

plaintiffs." *See Lindsay v. United States*, 4 F.4th 292, 294 (5th Cir. 2021) (citing *Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016)). To survive a Rule 12(b)(6) motion, a plaintiff must be plead sufficient facts to state a claim that is plausible on its face; mere "labels and conclusions" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

However, "[i]f, on a motion under Rule 12(b)(6) […], matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "Under Rule 12(d), a district court may convert a motion to dismiss to a motion for summary judgment so long as it gives the parties a 'reasonable opportunity to present all the material that is pertinent to the motion.'" *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 487 (5th Cir. 2016) (quoting Fed. R. Civ. P. 12(d)). An implicit conversion to summary judgment occurs once the district court looks outside of the pleadings, regardless of whether the parties were explicitly informed of the conversion. *See e.g.*, *Boateng v. BP, P.L.C.*, 779 F. App'x 217, 220 (5th Cir. 2019) (quoting *Trinity Marine Prods., Inc.*, 812 F.3d at 487).

Although a district court "need not advise either party of its intention" to convert, *Holguin v. U.S. Dep't of Army*, 98 F.3d 1337 (5th Cir. 1996), the non-movant must be given ten days to submit evidence of its own. *See Hodge,* 90 F.4th at 845 (citing *Holguin*, 98 F.3d at 1337). "[The] ten-day 'period begins running when the non-movant is first put on notice that, based on its acceptance of evidence outside the pleadings, the court could convert the Rule 12(b)(6) motion into a summary judgment.'" *Id.*

The United States Fifth Circuit Court of Appeals has recognized a district court looking "outside of the pleadings" when it considered new factual evidence and legal theories submitted

by a plaintiff. *See Boateng*, 779 Fed.App'x at 220.[1] Additionally, when a defendant attaches exhibits to their memorandum in opposition, said exhibits "are outside the pleadings" and require the district court to convert the motion to dismiss into a motion for summary judgment. *See McNealy v. Becnel*, No. CV 14-2181, 2016 WL 6070073, at *7 (E.D. La. Oct. 17, 2016), *opinion clarified*, No. CV 14-2181, 2016 WL 6441237 (E.D. La. Nov. 1, 2016), and *on reconsideration*, No. CV 14-2181, 2016 WL 6807398 (E.D. La. Nov. 17, 2016), and *on reconsideration*, No. CV 14-2181, 2016 WL 6807395 (E.D. La. Nov. 17, 2016).

2. *Motion for summary judgment standard.*

Once converted, the court is to analyze the motion under the summary judgment standard. *See e.g.*, *McQuirter v. Lehmann*, No. CV 17-1370, 2017 WL 6623993, at *2-3 (E.D. La. Dec. 28, 2017). Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) & (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material in support or opposition of a motion for summary judgment may be considered if it is "capable of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)). Courts view all facts and evidence in the light most favorable to the non-moving party, but "refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land*

---

[1] "Boateng submitted new factual evidence in opposition to BP's motion to dismiss that did not merely reiterate what he said in his pleadings but provided the court with new substantiation for his claims. In fact, Boateng even asserted an entirely new legal theory that was not in his complaint: unjust enrichment. Since the district court looked beyond the pleadings by considering new factual evidence, the district court implicitly converted the motion to one for summary judgment."

*Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see, e.g., Liedtke v. City of Austin*, 185 F.4th 560, 570 (5th Cir. 2026).

Where the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (citing Celotex, 477 U.S. at 322, 106 S.Ct at 2553-54; *Moody v. Jefferson Par. Sch. Bd.*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991)).

While pro se filings "must be construed liberally and reviewed less stringently than those drafted by attorneys," they are not "exempt from compliance with relevant rules of procedural and substantive law." *Verdin v. Soignet*, No. CV 22-4513, 2024 WL 1740214, at *1 (E.D. La. Apr. 23, 2024); *see also Ogbodiegwu v. Wackenhut Corr. Corp.*, 202 F.3d 265 (5th Cir. 1999) ("There is certainly no authority for suggesting that pro se parties are exempt from provisions of substantive law that restrict or bar their causes of action."). This includes compliance with the relevant rules for summary judgment. *Ogbodiegwu*, 202 F.3d at 265 ("there is nothing improper in dismissing a pro se party's complaints on summary judgment…").

**B. Analysis**

1. *Conversion of Defendants' motions to dismiss into motions for summary judgment is proper.*

On June 29, 2026, the OPD Defendants attached an exhibit to their memorandum in support of their motion to dismiss for failure to state a claim. (Rec. Doc. 31-2.) In addition, on August 4, 2026, Mr. Mosley filed an amended complaint, where he added multiple new legal theories: (1) a substantive due process claim for arbitrary, coercive state action shocking the conscience; and (2) state law claims for conversion and spoliation. (Rec. Doc. 40-1 at 6-7; Rec. Doc. 1 at 5-6.)

When the Court accepted the OPD Defendant's exhibit and Mr. Mosley's new factual allegations and legal theories (Id.), it implicitly placed the parties on notice that it had accepted evidence outside of the pleadings. *See Boateng*, 779 Fed.App'x at 220; *McNealy*, 2016 WL 6070073 at *7. Such acceptance initiated the ten-day period on June 29, 2026. (Rec. Doc. 31-2.) Since then, 121 days have passed, clearly satisfying the ten-day period and converting the Defendants' motions to dismiss into motions for summary judgment.

2. *Applying the summary judgment standard to Mr. Mosley's § 1983 claims.*

Mr. Mosley raises four 42 U.S.C. § 1983 claims in his amended complaint: (1) a procedural due process claim for deprivation of protected property (Count I); (2) a substantive due process claim for arbitrary and coercive state action shocking the conscious (Count II); (3) a claim for denial of meaningful access to courts and administrative proceedings (fourteenth amendment) (Count III); and (4) a *Monell* claim for unconstitutional policy, custom, and failure to supervise Count IV). (Rec. Doc. 40-1 at 6-7.) "To pursue a claim under § 1983, a 'plaintiff[] must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *E.g.*, *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008) (quoting *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urb. Dev.,* 980 F.2d 1043, 1050 (5th Cir. 1993)). Summary judgment is proper where the plaintiff fails to establish the defendants as "persons" acting under the color of state law. *See Guidry v. La. Dep't of Pub. Safety*, No. 24-30754, 2026 WL 687932, at *3 (5th Cir. Mar. 11, 2026).

a. Defendants, the Louisiana Public Defender Oversight Board and Mr. Starns are not "persons" under § 1983.

Beginning with whether the Board and Mr. Starns are "persons" under § 1983, the Supreme Court has recognized that the State and its officials, acting within their official capacity, are not

"persons" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989); *Med RX/Sys., P.L.L.C. v. Tex. Dep't of State Health Servs.*, 633 F. App'x 607, 610 (5th Cir. 2016) (citing *Lapides v. Bd. of Regents,* 535 U.S. 613, 617, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002)). "This rule extends to 'arms of the state…'" *Martin v. Dep't of Child. & Fam. Servs.,* 500 F. Supp. 3d 527, 543 (E.D. La. 2020) (quoting *MedRx.Sys., P.L.L.C.*, 633 F.App'x at 610) (finding that the State of Louisiana Department of Children and Family Services, an arm of the state, was not a "person" within the meaning of § 1983).

(1) The Louisiana Public Defender Oversight Board

Mr. Mosley has filed a Fourteenth Amendment denial of meaningful access to courts and administrative proceedings claim (Count III) and a *Monell* claim against the Board (Count IV). (Rec. Doc. 40-1 at 6-7.) The Board contends that it is not a "person" capable of being sued under § 1983. (Rec. Doc. 14-1 at 4.)

La. Stat. Ann. § 36:4(B)(21) provides that "[t]he Louisiana Public Defender Oversight Board (R.S. 15:141 et seq.) shall be placed within *the office of the governor as an independent agency* and shall exercise its powers, duties, functions, and responsibilities *in accordance with the provisions of R.S. 36:801.1*." La. Stat. Ann. § 36:4 (emphasis added). The office of the governor is within "the executive branch of state government." *See* La. Stat. Ann. § 36:4(B).

La. Stat. Ann. § 36:801 makes clear that transferred agencies, like the Board, "shall continue to exercise all powers, duties, functions, and responsibilities provided or authorized for each by the constitution or laws which are in the nature of policymaking, rulemaking, licensing, regulation, enforcement, or adjudication." In addition, the Board "shall continue to be composed and selected as provided by law." La. Stat. Ann. § 36:801.

Our sister court in the Middle District of Louisiana held that an executive branch agency is not a person that can be sued under § 1983. *See Wingard v. Louisiana through Dep't of Pub. Safety & Corr.*, 594 F. Supp. 3d 704, 714 (M.D. La. 2022).

Here, while the Board is designated as an "independent agency," it is housed within the Louisiana executive branch, under the office of the governor. La. Stat. Ann. § 36:4(B)(21). It continues to exercise its "powers, duties, functions, and responsibilities under the constitution or laws." La. Stat. Ann. § 36:801. The Board was established "to provide supervision and oversight to the office of the state public defender and to approve contracts in an amount of two hundred fifty thousand dollars or more." La. Stat. Ann. § 15:146(A)(1). By being housed within Louisiana's executive branch, and supervising a state agency, *see* La. Stat. Ann. § 15:145(A), the Board is acting as an arm of the state—i.e. an executive agency—that cannot be sued under § 1983. Accordingly, the Board is granted summary judgment as to Mr. Mosley's § 1983 claims against it (Counts III and IV).

(2) Mr. Starns, in his official and individual capacities

As for Mr. Starns, Mr. Mosley has brought claims against him in his individual and official capacities for violation of his procedural due process rights (Count I) and for denial of meaningful access to courts and administrative proceedings under the Fourteenth Amendment (Count III). (Rec. Doc. 40-1 at 6-7.) In turn, Mr. Starns argues that he is not a "person" able to be sued under § 1983 in his official capacity and that he is entitled to qualified immunity in his individual capacity. (Rec. Doc. 14-1 at 4, 8-9.)

Once more, a state official in their official capacity cannot be sued under § 1983. *See Will*, 491 U.S. at 71. Here, Mr. Starns is a state official, "appointed by the governor" La. Stat. Ann. § 15:152(A), who leads the Louisiana Office of the Public Defender. *See Rémy Voisin Starns*, Office

of the State Public Defender, Staff, (last visited Oct. 21, 2026), https://www.statepublicdefender.la.gov/staff/remy-voisin-starns/. In this capacity, Mr. Starns acts on behalf of the State to supervise and ensure the delivery of legal services by appointed counsel in criminal proceedings at the State's expense, among other responsibilities. *See* La. Stat. Ann. § 15:152(B)(1-15). Mr. Starns, in his official capacity, is a state official that cannot be sued under § 1983. Consequently, summary judgment is proper as to the § 1983 claims against him in this capacity.

Regarding Mr. Starns in his individual capacity, "[a] state official sued in his personal capacity under § 1983 is entitled to qualified immunity from damages, which protects the official from liability for any act that was not objectively unreasonable at the time of the act." *Moses v. Mahmoud*, No. CV 20-2361, 2021 WL 4132220, at *7 (E.D. La. Feb. 10, 2021), *report and recommendation adopted,* No. CV 20-2361, 2021 WL 4127405 (E.D. La. Sept. 9, 2021) (citing *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019)). "A government official is entitled to QI [(qualified immunity)] unless a plaintiff establishes 'that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation.'" *Hutcheson v. Dallas Cnty., Tex.*, 994 F.3d 477, 480 (5th Cir. 2021) (quoting *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016)). When the plaintiff cannot satisfy the first step in the analysis, there is no dispute of material fact and summary judgment is proper. *See Id.* at 481.

"Conclusory allegations are insufficient to state a constitutional violation." *Terry v. City of New Orleans*, 523 F. Supp. 2d 486, 493 (E.D. La. 2007). Additionally, "[w]here plaintiffs fail to cite or identify law clearly establishing a constitutional violation, denial of qualified immunity is not justified even if, given the state of the law, plaintiffs 'could have done so.'" *Johnson v. Smith*,

No. CV 24-170, 2024 WL 5010217, at *4 (E.D. La. Dec. 6, 2024), *aff'd,* No. 24-30791, 2025 WL 3092772 (5th Cir. Nov. 5, 2025) (quoting *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020)).

In both his first and amended complaints, Mr. Mosley fails to cite law establishing a constitutional violation. In his original complaint, Mr. Mosley lacks citations to cases or authorities supporting his three causes of actions. (Rec. Doc. 1 at 4-6.) Concerning the § 1983 claims against Mr. Starns (Counts I and III), Mr. Mosley merely states in his amended complaint that (1) "Louisiana law and Fourteenth amendment jurisprudence" gives him a vested property right in his criminal file (Count I) (Rec. Doc. 40-1 at 4) and (2) that he "has been stripped of…documents needed to file applications for post-conviction relief under La. C.Cr.P. art 930.3…" (Count III) (Id. at 6.) Notably, Mr. Mosley has previously filed for post-conviction relief in state and federal court. *See Mosley v. Cain*, No. CIVA 06-6259, 2009 WL 2982930, at *2 (E.D. La. Sept. 14, 2009). The state courts denied his post-conviction relief, as did this Court. *Id.* at *2, *6. The Fifth Circuit ultimately denied his certificate on appeal for such relief. *Mosley v. Cain*, No. 09-30978 USDC No. 2:06-CV-6259, at *2.

Here, Mr. Mosley has failed to show that Mr. Starns violated a constitutional right. He has not clearly established a property interest in his case file, nor has he shown how lacking the file denies him access to the courts. Furthermore, Mr. Mosley has already filed for post-conviction relief in state and federal forums, where he was denied such relief. *See Mosley v. Cain*, WL 2982930, at *2; *see Mosley v. Cain*, No. 09-30978 USDC No. 2:06-CV-6259, at *2. Because Mr. Mosley has failed to satisfy his burden of the first step in the analysis for qualified immunity, there is no genuine issue of material fact. *See Hutcheson*, 994 F.3d at 481. As a result, Mr. Starns is entitled to qualified immunity and summary judgment.

b. Mr. Early and File Depot are not "persons" under § 1983.

Mr. Mosley brings a procedural due process claim (Count I) and Fourteenth Amendment claim for denial of meaningful access to courts and administrative proceedings (Count III) against Mr. Early and File Depot. (Rec. Doc. 40-1 at 6-7.) Mr. Early and File Depot maintain that they are private actors that cannot be sued under § 1983. (Rec. Doc. 24-1 at 5.) In his original and amended complaints, Mr. Mosley concedes that File Depot is a private entity.[2] (Rec. Doc. 1 at 3; 40-1 at 3.) As the president of File Depot, Mr. Early is also a private party. (Id.)

"Section 1983 provides a cause of action against '[e]very person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State*' deprives someone of a federal constitutional or statutory right. (Emphasis added.) As its text makes clear, this provision protects against acts attributable to a State, *not those of a private person*." *Lindke v. Freed*, 601 U.S. 187, 764 144 S. Ct. 756, 218 L. Ed. 2d 121 (2024) (emphasis added). However, a private party qualifies as a state actor "in a few limited circumstances":

> (i) when the private entity performs a traditional, exclusive public function, see, *e.g., Jackson*, 419 U.S. at 352–354, 95 S.Ct. 449; (ii) when the government compels the private entity to take a particular action, see, *e.g., Blum v. Yaretsky*, 457 U.S. 991, 1004–1005, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); or (iii) when the government acts jointly with the private entity, see, *e.g., Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941–942, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).
> *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 139 S. Ct. 1921, 204 L. Ed. 2d 405 (2019).

"'Deciding whether a deprivation of a protected right' falls within one of these categories 'begins by identifying the specific conduct of which the plaintiff complains.'" *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433 (5th Cir.), *cert. denied,* 146 S. Ct. 329, 223 L. Ed. 2d 163 (2025) (quoting *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005)).

---

[2] In his complaint, Mr. Mosley states "File Depot, is a private corporation…" (Rec. Doc. 1 at 3.) In his amended complaint, Mr. Mosley notes once more that "File Depot, LLC, is a private commercial entity…" (Rec. Doc. 40-1 at 3.)

Mr. Mosley states that "File Depot, LLC, is … under contract with OPD to store, manage, catalog, and safeguard official client records." (Rec. Doc. 40-1 at 3.) He alleges that "[u]nder 42 U.S.C. 1983, File Depot LLC acts under color of state law when executing state-delegated public custodial duties." (Id.) He further alleges that Mr. Early acted under color of state law and sued him "in his individual and official capacities for failing to maintain basic warehouse inventory controls and losing public legal archives." (Id. at 3, 6.) It seems Mr. Mosley complains that Mr. Early and File Depot were performing a traditional, exclusive public function of maintaining his case file in place of the OPD. Accordingly, the Court will analyze whether retention of client's criminal case file is an exclusive public function.

To determine whether an act is an exclusive public function, the Supreme Court stated that:

> It is not enough that the federal, state, or local government exercised the function in the past, or still does. And it is not enough that the function serves the public good or the public interest in some way. Rather, to qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have traditionally *and* exclusively performed the function. See *Rendell-Baker v. Kohn*, 457 U.S. 830, 842, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Jackson*, 419 U.S. at 352–353, 95 S.Ct. 449; *Evans v. Newton*, 382 U.S. 296, 300, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966).
>
> The Court has stressed that "very few" functions fall into that category. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Under the Court's cases, those functions include, for example, running elections and operating a company town. See *Terry v. Adams*, 345 U.S. 461, 468–470, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (elections); *Marsh v. Alabama*, 326 U.S. 501, 505–509, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (company town); *Smith v. Allwright*, 321 U.S. 649, 662–666, 64 S.Ct. 757, 88 L.Ed. 987 (1944) (elections); *Nixon v. Condon*, 286 U.S. 73, 84–89, 52 S.Ct. 484, 76 L.Ed. 984 (1932) (elections). The Court has ruled that a variety of functions do not fall into that category, including, for example: running sports associations and leagues, administering insurance payments, operating nursing homes, providing special education, *representing indigent criminal defendants*, resolving private disputes, and supplying electricity.
> *Manhattan Cmty. Access Corp.,* 587 U.S. at 809-10 (emphasis added).

In addition to the foregoing, the Fifth Circuit has recognized that the "[a]cts of ... private contractors do not become acts of the government by reason of their significant or even total

engagement in performing public contracts.'" *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982)).

The Criminal Justice Standards for the Defense Function "are intended to address the performance of criminal defense counsel in all stages of their professional work." *See* Crim. Just. Standards for the Def. Function, Standard 4-1.1(d) (Am. Bar Ass'n 4th ed. 2017), https://www.americanbar.org/groups/criminal_justice/resources/standards/defense-function. The Standards apply to attorneys who are "privately retained, assigned by the court, acting *pro bono* or serving indigent defendants in a legal aid or public defender's office." *See Id.* at Standard 4-1.1(a). Standard 4-3:11 outlines a criminal defense attorney's obligations regarding a client's file as the following:

> Unless rules or statutes in the jurisdiction require otherwise, defense offices may retain clients' files unless a client requests the file. If the client's file remains with defense counsel, counsel should retain copies of essential portions until the client provides further instructions or for at least the length of time consistent with statutes and rules of the jurisdiction.
> *Id.* at 4-3:11.

After analyzing the cited precedent and thoroughly reading the Criminal Justice Standards, retention and safeguarding of a client's criminal case file is not a function that is traditionally and exclusively performed by government. Put simply, the Standards apply to all criminal defense attorneys, and not just ones representing the State or government. *See Id.* at Standard 4-1.1(a). Even if the standard applied only to public defenders, this Court acknowledges that "a public defender in an official capacity … ha[s] no authority to act on behalf of the State or the Parish in which they are appointed to represent a criminal defendant. In an individual capacity, a public defender is not considered [a] person or a state actor for purposes of § 1983. *Fitch v. Bethancourt*, No. CV 24-958, 2024 WL 2927742, at *6 (E.D. La. Apr. 24, 2024), *report and*

*recommendation adopted*, No. CV 24-958, 2024 WL 2891846 (E.D. La. June 10, 2024) (citing *Polk Cnty.*, 454 U.S. 312; *Mills v. Crim. Dist. Ct. #3*, 837 F.2d 677, 679 (5th Cir. 1988)).

In a similar case, *Williams v. Colwart*, the United States District Court for the Western District of Louisiana held that a public defender did not act under color of state law when he allegedly destroyed a former client's case file in accordance with the Public Defender's Office policy. *See Williams v. Colwart*, No. CIV.A. 6:13-2144, 2013 WL 5441411, at *2 (W.D. La. Sept. 27, 2013).

Likewise, Mr. Early and File Depot, as private actors, did not perform a traditional and exclusive public function in safeguarding and allegedly losing Mr. Mosley's case file. Additionally, the contract between File Depot and the OPD—which may or may not be a public contract — does not transform Mr. Early nor File Depot into state actors. *See Cornish v. Corr. Servs. Corp.*, 402 F.3d at 550. As a result, Mr. Early and File Depot cannot be sued as "persons" under § 1983, entitling them to summary judgment and dismissal of the § 1983 claims against them.

c. The OPD Defendants are not "persons" that can be sued under § 1983.

Mr. Mosley brings all four of his § 1983 claims against the OPD defendants; namely Counts I, II, III, and IV against Defendant Engelberg, Count I, II, and III against Ms. Leblanc, and Counts II, III, and IV against the OPD. (Rec. Doc. 40-1 at 6-7.) The OPD Defendants collectively argue that they are not state actors under § 1983. (Rec. Doc. 31-1 at 3; Rec. Doc. 39 at 2-3.)

Courts within the Fifth Circuit recognize that both public defenders and a public defender's offices are not state actors. *See Amir-Sharif v. Dallas Cnty. Pub. Defs. Off.*, 233 F. App'x 364, 365 (5th Cir. 2007); *see also Lavergne v. Pub. Def. Fifteenth Jud. Dist. Ct.*, No. CIV.A. 6:13-2139, 2014 WL 931502, at *4 (W.D. La. Mar. 10, 2014), *aff'd sub nom. Lavergne v. Pub. Def. 15th Jud.*

*Dist. Ct.*, 583 F. App'x 362 (5th Cir. 2014) (holding that public defenders are not state actors and public defender's offices cannot be sued under § 1983); *Young v. Pub. Def.'s Off.*, No. CV 25-1753, 2025 WL 3145100, at *2-3 (E.D. La. Oct. 22, 2025), *report and recommendation adopted*, No. CV 25-1753, 2025 WL 3142363 (E.D. La. Nov. 10, 2025). As noted above, a public defender, in their individual capacity, is not a "person" or state actor under § 1983. *See Fitch v. Bethancourt*, WL 2927742, at *6. Similarly, a public defender, in their official capacity, lacks authority to act on behalf of the state. *Id.*

First, Mr. Engelberg, in his individual and official capacities cannot be sued under § 1983. Mr. Engelberg, in his individual capacity, much like Mr. Early, is a private individual who did not perform a traditional and exclusive public function. *See* discussion *supra* Section 2(b), pp. 21-24. In his official capacity, Mr. Engelberg is the Chief Public Defender for Orleans Parish (see Rec. Doc. 31-1 at 1), and public defenders in their official capacity lack the requisite authority to act on behalf of the State. *See Fitch v. Bethancourt*, WL 2927742, at *6.

Second, the OPD is a district public defender's office representing indigent clients within Orleans Parish. *See Who We Are*, Orleans Public Defenders, (last visited Oct. 27, 2026), https://www.opdla.org/about-opd; *41st District*, District Office, Office of the State Pub. Def., (last visited Oct. 27, 2026), https://www.statepublicdefender.la.gov/district-offices/district-41/. As a public defender's office, the OPD is not a person subject to suit under § 1983.

Finally, Ms. Leblanc is a "senior legal assistant," (Rec. Doc. 40-1 at 3), sued in her individual and official capacities. Ms. Leblanc cannot be sued in her individual capacity because she is a private person that did not perform a traditional and exclusive public function. *See* discussion *supra* Section 2(b), pp. 21-24. In her official capacity, Ms. Leblanc is being sued as a senior legal assistant. (Rec. Doc. 40-1 at 3.) If a public defender in their official capacity lacks the

authority to act on behalf of the State, *see Fitch v. Bethancourt*, WL 2927742, at *6, the same can be said of a legal assistant.

Mr. Mosley cannot sue any of the OPD Defendants under § 1983, as they are either not a "person" or did not act under the color of state law. As a result, the OPD Defendants are entitled to summary judgment and the § 1983 claims against them are dismissed.

3. *Supplemental jurisdiction over Mr. Mosley's state law claims is rejected.*

Mr. Mosley raises Louisiana state law claims for professional negligence, breach of fiduciary duty, conversion, and spoilation. (Rec. Doc. 40-1 at 7-8.) When a district court has original jurisdiction over federal claims pursuant to 28 U.S.C. § 1331, it "also has supplemental jurisdiction over related state law claims when the state law claims are 'so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Murillo v. Coryell Cnty. Tradesmen, LLC,* No. CV 15-3641, 2017 WL 2721513, at *4 (E.D. La. June 23, 2017) (quoting 28 U.S.C. § 1367(a)). Claims arise from the same case or controversy when "they 'derive from a common nucleus of operative fact.'" *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, No. CIV.A. 10-4505, 2012 WL 195533, at *3 (E.D. La. Jan. 23, 2012) (citing *Mendoza v. Murphy,* 532 F.3d 342, 346 (5th Cir. 2008)).

A district court has wide discretion on whether to exercise or refuse supplemental jurisdiction. *See Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). That discretion is reviewed by the Fifth Circuit "only for abuse of discretion." *Moon v. City of El Paso*, 906 F.3d 352, 360 (5th Cir. 2018).

A district court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original

jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
28 U.S.C.A. § 1367(c)(1-4) (West).

Ultimately, "'[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial.'" *Hicks v. Austin Indep. Sch. Dist.*, 564 F. App'x 747, 748 (5th Cir. 2014) (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.,* 554 F.3d 595, 602 (5th Cir.2009)). The general rule applies where a district court dismisses a plaintiff's claims on summary judgment within the same opinion. *See Culotta v. Sodexo Remote Sites P'ship*, No. CIV.A. 10-2946A, 2011 WL 3268274, at *5 (E.D. La. July 29, 2011).

"In addition to the statutory factors, the court must also balance the factors of judicial economy, convenience, fairness, and comity." *Lemly v. St. Tammany Par. Hosp., Dist. No. 1*, 614 F. Supp. 2d 727, 732 (E.D. La. 2008) (quoting *Smith v. Amedisys, Inc.,* 298 F.3d 434, 446 (5th Cir. 2002)). Considering these additional factors, this Court has declined supplemental jurisdiction where: (1) the state law claims have yet been addressed and exclusively involve issues of state law, *Collins v. Gusman*, No. CIV.A. 14-234, 2015 WL 1468298, at *7 (E.D. La. Mar. 30, 2015); and (2) where the litigation is still in the early stages, *Kast v. Greater New Orleans Expressway Comm'n,* 719 F. Supp. 2d 662, 677 (E.D. La. 2010), *as amended* (Sept. 13, 2010); *contrast with Threadgill v. Orleans Par. Sch. Bd.*, No. CIV.A. 02-1122, 2013 WL 773032, at *4 (E.D. La. Feb. 28, 2013) (where the district court exercised supplemental jurisdiction because "the suit was filed over ten years ago."). However, the Fifth Circuit stated that a district court abuses its discretion following dismissal of all federal claims "after [it] invests a significant amount of judicial resources in the litigation…" *See Brookshire Bros. Holding,* 554 F.3d at 602.

Here, Mr. Mosley's state law claims form part of the same case as his federal claims because they arise from the same common nucleus of facts, i.e. the failure to safeguard and produce his case file. (Rec. Doc. 40-1 at 7-8.) However, the Court declines supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), as it has dismissed all of Mr. Mosley's federal claims against the named Defendants.

Additionally, the factors of judicial economy, convenience, fairness and comity weigh against exercising supplemental jurisdiction. Unlike *Brookshire Bros. Holding Inc.*, where "there were over 1,300 entries in the district court docket," *Lowe v. Chalmette Ref. LLC*, No. CV 17-9080, 2018 WL 3616927, at *3 (E.D. La. July 26, 2018) (discussing *Brookshire Bros. Holding Inc.* to determine whether a significant amount of judicial resources were invested), this matter has a total of forty-four entries in the docket. In addition, the state law claims have yet to be addressed by this court and exclusively involve state law issues. (See Rec. Doc. 40-1 at 7-8.)

This case is in its earlier stages. The complaint was filed in February of this year and jury trial has not been scheduled. *Cf. Lowe v. Chalmette Refining LLC*, 2018 WL 3616927 at *3 (Where parties were in final preparations for trial weighed in favor of exercising supplemental jurisdiction.). Accordingly, supplemental jurisdiction over Mr. Mosley's remaining state law claims is rejected and dismissed without prejudice. *See Culotta v. Sodexo Remote Sites P'ship*, 2011 WL 3268274 at *5 (citing *Bass v. Parkwood Hospital,* 180 F.3d 234, 246 (5th Cir.1999) (Dismissal of state law claims due to declination of supplemental jurisdiction should be done to allow opportunity for filing in the appropriate state court.").

New Orleans, Louisiana, this 5th day of November 2026

Senior United States District Judge